UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VICTORIA LYNN ROBERTS,

    Plaintiff,

v.                                  Case No. 8:21-cv-508-AEP

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

    Defendant.
_____/

## ORDER

Plaintiff seeks judicial review of the denial of her claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.**

**A.    Procedural Background**

Plaintiff filed an application for a period of disability, DIB, and SSI (Tr. 483–97). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 218–91, 325–41). Plaintiff then requested an

---

[1] Dr. Kilolo Kijakazi is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Kilolo Kijakazi should be substituted for Commissioner Andrew M. Saul as the defendant in this matter. No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

administrative hearing (Tr. 342–43). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 171–89). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 292–312). Plaintiff then requested review of the ALJ's decision by the Appeals Council (Tr. 393). After consideration, the Appeals Council remanded the case back to the ALJ (Tr. 313–15). In doing so, the Appeals Council indicated that the ALJ would proceed with the following:

> Obtain supplemental evidence from a vocational expert to determine whether the claimant has acquired any skills from past work performed prior to July 31, 2013 that are transferable to other occupations under the guidelines in Social Security Ruling 82-41. The hypothetical questions should reflect the specific capacity/limitations established by the records as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of such appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence[,] the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

(Tr. 315).

Upon remand from the Appeals Council, the ALJ held two hearings at which Plaintiff appeared (Tr. 132–58, 164–70).[2] After the hearing, the ALJ again issued an unfavorable decision finding Plaintiff not disabled and denying Plaintiff's claim for

---

[2] At the initial hearing, Plaintiff appeared with her mother but without a legal representative, so the ALJ discussed Plaintiff's right to representation with Plaintiff and her mother and indicated that the second hearing would occur within 90 days of the initial hearing even if she did not obtain representation (Tr. 164-70). At the second hearing, Plaintiff appeared with counsel and provided testimony (Tr. 132-58).

benefits (Tr. 73–95). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1–7, 468–71). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B.     Factual Background and the ALJ's Decision

Plaintiff, who was born in 1961, claimed disability beginning July 31, 2013, which she later amended to October 25, 2017 (Tr. 483, 490, 684–93). Plaintiff obtained at least a high school education (Tr. 546). Plaintiff's past relevant work experience included work as an office manager, a teller, a fast food worker, and a retail cashier (Tr. 152, 547). Plaintiff alleged disability due to depression, anxiety disorder, rheumatoid arthritis, chronic bronchitis, asthma, spondylitis from T-11 to S-1, herniated disc at T-11 to T-12, torn right shoulder rotator cuff, migraines, and limited mobility in the right wrist due to a work injury (Tr. 545).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2020 and had not engaged in substantial gainful activity since October 25, 2017, the amended alleged onset date (Tr. 79). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: osteoarthritis and degenerative disc disease of the lumbar spine (Tr. 79). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 80). The ALJ then

concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work, except that she could lift and/or carry 20 pounds occasionally; lift and/or carry 10 pounds frequently; stand and/or walk six hours in an eight-hour workday; sit six hours in an eight-hour workday; frequently balance; only occasionally stoop, kneel, crouch, crawl, and climb ladders, ropes, scaffolds, ramps, and stairs; only frequently handle with both hands; and must avoid concentrated exposure to extreme cold and vibrations, dust, gases, poor ventilation, and odors (Tr. 81). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 82).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff could perform her past relevant work as an office manager and a retail cashier (Tr. 85). Beyond that, the VE testified that, given Plaintiff's background and the RFC, Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a recreational facility attendant and a grocery clerk (Tr. 86, 153–57). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 86–87).

**II.**

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national

economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were

applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam) (citations omitted).

### III.

Plaintiff argues that the ALJ erred in issuing his decision by failing to properly develop the record as to Plaintiff's mental impairments specifically through the failure to order a psychological examination (Doc. 18 at 10). Plaintiff points to two 2016 opinions from psychologists who determined that the claimant had no severe mental impairments (Tr. 245–46, 263–64). Plaintiff asserts that the ALJ should not have relied on the opinions from 2016, approximately four years before the ALJ issued its decision, but rather the ALJ should have obtained an updated psychological consultative examination (Doc. 18 at 6). For the foregoing reasons, Plaintiff's argument is without merit and the judgment of the ALJ is affirmed.

"[T]he ALJ has a basic duty to develop a full and fair record." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *see* 20 C.F.R. §§ 404.1512(b)(1)(ii), 416.912(b)(1)(ii) (stating that if the claimant alleges his disability began less than 12 months before filing his application, the ALJ will develop the claimant's complete medical history from the month the claimant alleges his disability began to the month in which the application was filed). However, "the claimant bears the burden of proving he is disabled," and has a duty to provide evidence supporting his claim. *Ellison*, 355 F.3d at 1276; 20 C.F.R. §§ 404.1512(a), 416.912(a)(1) ("This duty is ongoing and requires you to disclose any additional related evidence about which you become aware."). When the claimant is not represented at the hearing before

the ALJ, which is not the case here,[3] the ALJ's "obligation to develop a full and fair record rises to a special duty . . . to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts and to be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Graham v. Apfel*, 129 F.3d 1420, 1422–23 (11th Cir. 1997) (internal citations omitted).

The ALJ's duty to develop the record may require ordering a consultative examination. The ALJ is required to order a consultative examination "only when necessary information is not in the record and cannot be obtained from the claimant's treating medical sources." *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001); *see* 20 C.F.R. § 404.1519a(b) (stating that the ALJ may order a consultative examination when the evidence in the record is insufficient to allow the ALJ to make a determination). Thus, if there is sufficient information in the record for the ALJ to make an informed decision, the ALJ is not required to order a consultative examination. *Ingram*, 496 F.3d 1269. "It is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for the ALJ to make an informed decision." *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984).

---

[3] The Commissioner argues that the heightened duty was not triggered because Plaintiff was represented by counsel (Doc. 18 at 11). Plaintiff was initially not represented by counsel but obtained counsel prior to the administrative hearing (Tr. 132). At any rate, Plaintiff does not argue for the heightened duty, but rather bases her argument on the ALJ's basic duty to develop the record (see Doc. 18 at 7–10). Accordingly, no heightened duty was triggered.

In order to qualify for reversal, a plaintiff must demonstrate prejudice. *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (citing *Kelly v. Heckler*, 761 F.2d 1538, 1540 n.2 (11th Cir. 1985)). Prejudice may be shown where the record contains evidentiary gaps resulting in "unfairness or clear prejudice." *Smith v. Schweiker*, 677 F.2d 826 (11th Cir. 1982) (internal quotation and citation omitted); *see Brown*, 44 F.3d at 936 n.9 (finding that there may be unfair prejudice to a claimant where there is an evidentiary gap in the record involving recent medical treatment). However, the mere lack of a consultative examination is inadequate to meet a plaintiff's burden to demonstrate prejudice. *See Henderson v. Comm'r of Soc. Sec.*, 353 F. App'x 303, 305 (11th Cir. 2009) (holding claimant failed to show prejudice for failure to develop the record as claimant did "not explain how the absence of [the discussed evidence] precluded the ALJ from making an informed disability determination. Nor does [claimant] explain how such an assessment would have affected the ALJ's overall disability determination"); *Slocumb v. Comm'r of Soc. Sec.*, No. 5:16-cv-617-Oc-10PRL, 2017 WL 2889804, at *4 (M.D. Fla. May 15, 2017) ("[I]t is Plaintiff's duty to show *how* the ALJ's failure to obtain a psychological examination prejudiced her, the mere lack of a consultative examination is inadequate to meet Plaintiff's burden when the record contains sufficient evidence to determine whether she is disabled."). Rather, a plaintiff must show the ALJ's decision would have been impacted by a consultative examination. *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) (finding claimant could not show she suffered prejudice

"because there is no evidence ALJ's decision would have changed in light of any additional information").

Here, Plaintiff is unable to show prejudice requiring remand because there is no evidentiary gap in the record. Plaintiff first reported suffering from depression on September 5, 2014 and the record indicates she was recommended a counselor for her stress and depression in June of 2015 (Tr. 817, 1018). From June 11, 2015 through June 9, 2016, Dr. Imran Kayani, Plaintiff's primary care physician, routinely noted that the Plaintiff had benign mental status evaluation findings with rare complaints of crying spells (Tr. 859, 874, 880, 886, 901, 906). Dr. Kayani referred Plaintiff to a psychiatrist, Dr. Maulik Trivedi, who Plaintiff first visited July 12, 2016 and saw again on August 1, August 12, and October 17 of 2016 (Tr. 917–55). Dr. Trivedi diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder, social phobia, PTSD, and cognitive impairment but ruled out ADD (Tr. 946–47). Around this time, Dr. Eric Weiner and Dr. Jennifer Meyer issued separate examination reports, both of which concluded Plaintiff's mental impairments were non-severe (Tr. 245–46, 263–64). Plaintiff's treatment for her mental impairments paused after October 17, 2016 while her treatment for physical impairments continued (Tr. 1024–45, 1107–40). Plaintiff's mental health treatment resumed two years later when she began seeing LMHC Dawn Rowe for her depression and anxiety on November 21, 2019 and returned December 18, 2019 and January 15, 2020 (Tr. 1265–82). The ALJ issued his decision on remand on May 27, 2020 (Tr. 87).

Plaintiff attacks the ALJ's decision by arguing that in the interim period between the issuance of the consultants' reports and the ALJ's decision, it would have been "impossible for these two consultants to predict or consider, much less weigh" the fact that Plaintiff was prescribed medication for her mental impairments and was also seen by psychiatrist Dr. Trivedi and LMHC Rowe (Doc. 18 at 7–8). Thus, according to Plaintiff, an updated psychological consultative examination should have been ordered. However, Plaintiff neglects that it is the ALJ, not doctors, that determine whether a claimant is disabled. *Robinson*, 365 F. App'x at 999. While it may be true that the consultants could not have considered this new information, the ALJ's record included Plaintiff's prescription medication and visit records from Dr. Trivedi and LMHC Rowe (Tr. 917–55, 1265–82). Plaintiff does not explain the nature of the ALJ's alleged evidentiary gap, nor does Plaintiff set out how the ALJ's decision—not the consultant's decision—would have potentially changed with the addition of a consultative examination. The mere lack of a consultative examination is inadequate to meet Plaintiff's burden to demonstrate prejudice. *See Henderson*, 353 F. App'x at 305. Thus, Plaintiff fails to show that there was an evidentiary gap such that the ALJ's decision was prejudiced.

Plaintiff is also unable to show prejudice requiring remand because there was substantial evidence to support the ALJ's determination without the updated consultative examination. While the ALJ found the opinions by Dr. Weiner and Dr. Meyer persuasive and gave them "great weight," the ALJ did not rely on their opinions exclusively (Tr. 84). The ALJ relied on other evidence in the record. For

11

example, the ALJ noted the record showed largely "unremarkable" mental status examinations (Tr. 84). This is supported by the record. Plaintiff's primary care physician routinely noted that the Plaintiff had benign mental status evaluation findings from June 11, 2015 through June 9, 2016. (Tr. 859, 874, 880, 886, 901, 906). Plaintiff visited her psychiatrist July 12, August 1, August 12, and October 17 of 2016 and despite diagnosing Plaintiff with major depressive disorder, generalized anxiety disorder, social phobia, and PTSD, Dr. Trivedi consistently noted that Plaintiff had benign mental status exam findings and that Plaintiff "lacks evidence for signs and symptoms associated with a DSM diagnosis of Learning Disorder/PDD, Bipolar Disorder, Panic disorder, OCD, PTSD, Substance abuse, Eating Disorder, Dementia, and Psychosis." (Tr. 919–21, 932–34, 948–50). At various appointments with LMHC Rowe, the counselor described Plaintiff as appearing "anxious" and "uncomfortable" but otherwise behaving normally and lacking suicidal ideations (Tr. 1268, 1274, 1277). Plaintiff again received normal mental status reports on September 18, 2017 (Tr. 1118), December 20, 2019 (Tr. 1271), December 23, 2019 (Tr. 1256), January 24, 2020 (Tr. 1264), and February 18, 2020 (Tr. 1320).

      The ALJ also noted Plaintiff's lack of mental health treatment and that her treatment history is primarily for physical impairments (Tr. 84). This is also supported by the record. For example, Plaintiff's treatment for her mental impairments paused after October 17, 2016 while her treatment for physical impairments continued (Tr. 1024–43, 1107–40). Plaintiff's mental health treatment

resumed two years later when she began seeing LMHC Rowe for her depression and anxiety on November 21, 2019 and returned December 18, 2019 and January 15, 2020 (Tr. 1265–82).[4] In terms of medication for her mental health challenges, Plaintiff was prescribed escitalopram (Lexapro) by her primary care physician in 2015 (Tr. 898). Dr. Trivedi switched her to citalopram (Celexa) and duloxetine (Cymbalta) and later to a combination of aripiprazole (Abilify) and diazepam (Valium) (Tr. 924, 954). However, it is unclear whether Plaintiff actually took the prescribed medication because in November 2019, Plaintiff told her counselor that she did not stay on the medication due to tiredness but was willing to try again (Tr. 1277). She tried escitalopram for three days but complained of stomach pains and stopped (Tr. 1271, 1274). At the hearing, Plaintiff testified that she was currently taking the medication and had been for six to eight months (Tr. 145).

Plaintiff argues that reliance on a lack of treatment for mental health challenges is unfair due to lack of resources and the nature of mental health itself, citing *Sparks v. Barnhart*, 434 F. Supp. 2d 1128 (N.D. Ala. 2006). In *Sparks*, the district court noted that "[c]ourts have long recognized the inherent unfairness of placing emphasis on a claimant's failure to seek psychiatric treatment." *Id.* at 1135. *Sparks* addressed a claimant who had limited insight and whose mental illness caused her to make poor judgments such as stopping medication. *Id.* at 1136. The

---

[4] Plaintiff returned to Rowe on June 16, 2020 (Tr. 72), July 16, 2020 (Tr. 68), August 13, 2020 (Tr. 63), and September 8, 2020 (Tr. 55). However, as those appointments occurred after the hearing and the ALJ's decision, that evidence would not have been before the ALJ. Discussion of those appointments proceeds below in relation to the Appeal Council.

facts in *Sparks* which rendered lack of treatment an inappropriate point of analysis are not present here. In this case, Plaintiff has never mentioned, implied, or argued that her mental impairments or lack of resources negatively impacted her ability to seek treatment until this appeal. Without such an indication in the record, courts have found no unfairness. *See, e.g., Barnes v. Comm'r of Soc. Sec.*, No. 218CV312FTM38PDB, 2019 WL 5110697 (M.D. Fla. Aug. 2, 2019), report and recommendation adopted, No. 2:18CV312FTM38PDB, 2019 WL 3956190 (M.D. Fla. Aug. 22, 2019); *Benbow v. Astrue*, No. 5:12CV17/EMT, 2013 WL 771798, at *8 (N.D. Fla. Feb. 28, 2013) (unpublished) ("[T]he record wholly fails to support Plaintiff's suggestion that her 'mental illness itself . . . affected her failure to seek treatment.'").

Finally, the ALJ also noted that Plaintiff reports being mentally independent in most daily activities (Tr. 84). At various times in the record, Plaintiff described preferring to stay in her house and avoiding social interactions because they trigger her anxiety (Tr. 586, 604, 1275, 1317). Plaintiff also testified to issues with concentration, general sadness, and difficulties with personal and workplace interactions (Tr. 143–46). She said some days she does not feel like doing anything at all, even simple tasks (Tr. 145). However, Plaintiff also reported the ability to perform home and personal maintenance, prepare meals, pay bills, go to doctor's appointments, take medications, shop, and drive (Tr. 600–5). Plaintiff has also mentioned enjoying going to church on Sundays and spending time caring for

children such as serving as a nanny for various families and watching the children in the nursery after mass (Tr. 1268, 1274, 1277).

Plaintiff attacks this analysis by quoting *Lewis v. Callahan*, for the notion that "participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability. 125 F.3d 1436, 1441 (11th Cir. 1997). In *Lewis*, the Eleventh Circuit held that the ALJ improperly applied daily activity evidence to discount the opinion of a treating physician. *Id.* The Eleventh Circuit has since clarified that *Lewis* should not be read to bar ALJs from considering a claimant's daily activities entirely; rather, the case stands for the notion that "a claimant's admission that she participates in daily activities for short durations does not necessarily disqualify the claimant from disability." *Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 665 (11th Cir. 2010); 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (listing the claimant's daily activities as one of the factors to consider in evaluating the claimant's symptoms). Given that the daily activity testimony is not the ALJ's sole source of evidence, the ALJ does not run afoul of Eleventh Circuit case law by relying in part on daily activity evidence.

Plaintiff also attacks this analysis by arguing that the ALJ mischaracterizes Plaintiff's testimony by ignoring her level of discomfort or difficulty in performing her daily activities (Doc. 18 at 8 (citing *Williams v. Astrue*, No. CV406-19, 2008 WL 591288 (S.D. Ga. Mar. 3, 2008)). Plaintiff describes "having a hard time being friendly" with customers at former jobs and trouble focusing (Tr. 145). She also testifies that she sometimes has days where she does not feel like doing anything,

15

even making sandwiches or using the microwave (Tr. 145). The ALJ does not mischaracterize the nature of Plaintiff's daily activities as the district court found in *Williams*. 2008 WL 591288 at *5. The ALJ relied upon Plaintiff's ability to perform personal and household maintenance, prepare meals, pay bills, manage funds, go to doctor's appointments, take medicine, shop, drive provide information about her health or work history, follow instructions, comply with treatment, and get along with others (Tr. 79–80). Plaintiff's allegations of difficulties do not render the ALJ's reliance on the daily activity evidence faulty. Instead, the ALJ weighed the evidence. It is the ALJ's duty to weigh the evidence and it is not for this court to reweigh on appeal. *See Winschel*, 631 F.3d at 1178.

Thus, to summarize, Plaintiff failed to demonstrate prejudice from the ALJ's failure to order an updated psychological consultative examination. Plaintiff was unable to show either a prejudicial evidentiary gap or a lack of substantial evidence in the absence of the updated examination. Plaintiff raises a handful of additional arguments worth addressing, none of which warrant remand.

First, Plaintiff argues the ALJ has a statutory duty under 42 U.S.C. § 421(h) to make every reasonable effort to obtain the opinion of a qualified psychiatrist or psychologist "in any case where there is evidence which indicates the existence of a mental impairment." (Doc. 18 at 7 (citing 42 U.S.C. § 421(h))). As Plaintiff notes, the Eleventh Circuit implied that this duty applied to ALJ decisions in 1988 case *McCall v. Bowen*, 846 F.2d 1317, 1320 (11th Cir. 1988). However, the Eleventh Circuit has since walked back that interpretation, referencing the Third Circuit's

interpretation of the statute, which excludes hearings before ALJs from that requirement. *See Sneed v. Barnhart*, 214 F. App'x 883, 886 (11th Cir. 2006) (citing *Plummer v. Apfel*, 186 F.3d 422, 433 (3d Cir.1999)). Both circuits have emphasized the flexibility this provides ALJs in making their severity determinations. *Id.* ("[A]n ALJ has regulatory flexibility to evaluate mental impairments to determine their severity."); *Plummer*, 186 F.3d at 433 ("[T]he Commissioner's regulations provide an ALJ with greater flexibility than other hearing officers."). Accordingly, Plaintiff's interpretation of 42 U.S.C. § 421(h) no longer prevails in the Eleventh Circuit.

Second, Plaintiff points to "new, non-cumulative, and clearly relevant evidence presented to the Appeals Council regarding … the ongoing nature of severe mental health problems." (Doc. 18 at 8). It is not immediately clear what Plaintiff means to prove by bringing up this evidence. To the extent Plaintiff intends to argue the Appeals Council failed to consider the new evidence, that argument is without merit. When a claimant appeals an ALJ's decision to the Appeals Council, "[t]he Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Ingram*, 496 F.3d at 1261 (internal quotation and citation omitted). A remand is warranted when a claimant submits new evidence to the Appeals Council, and the Appeals Council did not adequately consider the new evidence in denying the claimant's request for review. *Timmons v. Comm'r of Soc. Sec.*, 522 F. App'x 897, 902 (11th Cir. 2013) (citing *Ingram*, 496 F.3d at 1268). Accordingly, "the claimant must show that,

17

in light of the new evidence submitted to the Appeals Council, the ALJ's decision to deny benefits is not supported by substantial evidence in the record as a whole. *Id.* (citing *Ingram*, 496 F.3d at 1266–67). The Eleventh Circuit consistently rejects the notion that the Appeals Council must articulate a detailed explanation when denying a request for review or considering newly submitted evidence. *See Parks ex rel. D.P. v. Comm'r, Soc. Sec. Admin.*, 783 F.3d 847, 852–53 (11th Cir. 2015) (concluding the Appeals Council is not required to make specific findings of fact when it denies review, regardless of whether the new evidence is deemed cumulative or not chronologically relevant); *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 784–85 (11th Cir. 2014) (concluding that, where the Appeals Council accepted the new evidence and stated that it denied review because the additional evidence failed to establish error in the ALJ's decision, the Appeals Council adequately reviewed the new evidence and did not have to provide a detailed rationale for denying review). Where the evidence submitted by the claimant is "new, material, and chronologically relevant," the Appeals Council must consider it. *Ingram*, 496 F.3d at 1261 (internal quotation omitted); see 20 C.F.R. §§ 404.970(b), 416.1470(b). "Evidence is 'material' when it is 'relevant and probative so that there is a reasonable possibility that it would change the administrative result.'" *Stone v. Soc. Sec. Admin.*, 658 F. App'x 551, 553 (11th Cir. 2016) (quoting *Milano v. Bowen*, 809 F.2d 763, 766 (11th Cir. 1987)). Further, evidence is considered chronologically relevant when it relates to the period on or before the date of the ALJ's decision.

*Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 864 (11th Cir. 2017) (citing *Washington v. Soc. Sec. Admin., Com'r*, 806 F.3d 1317, 1322 (11th Cir. 2015).

Plaintiff points to "new, non-cumulative, and clearly relevant evidence presented to the Appeals Council regarding . . . the ongoing nature of severe mental health problems." (Doc. 18 at 8). The evidence Plaintiff cites consists of four additional appointments with LMHC Rowe on June 16, 2020 (Tr. 68–72), July 16, 2020 (Tr. 64–68), August 13, 2020 (Tr. 59–63), and September 8, 2020 (Tr. 55–59). The Appeals Council considered and addressed the evidence Plaintiff cites and rejects it because the "additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before June 1, 2020." (Tr. 2). Although the treatment records are substantively relevant to Plaintiff's claim, they do not contain probative information that has the reasonable possibility of changing the administrative result. At these appointments, Plaintiff reported symptoms of her mental health challenges consistent with previous appointments and received normal mental status examinations. Plaintiff was not prescribed any new medication but stayed on escitalopram, which the ALJ was aware of already. Therefore, the Appeals Council applied the appropriate legal standards and did not need to provide any further substantive rationale for its decision. Remand is not warranted on that basis.

The ALJ properly developed a full and fair record in evaluating Plaintiff's mental health impairments. For the foregoing reasons, the ALJ applied the correct

legal standards, and the ALJ's decision is supported by substantial evidence. Thus, reversal is not warranted.

## IV.

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is AFFIRMED.

2. The Clerk is directed to enter final judgment in favor of the defendant and close the case.

DONE AND ORDERED in Tampa, Florida, on this 26th day of September, 2022.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc: Counsel of Record